# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DARWIN BRYAN PHARRIES,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-22-750-STE ) |
| **KILOLO KIJAKAZI,** **Commissioner of the Social Security Administration,** | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 22-30). The Appeals Council denied Plaintiff's

request for review. (TR. 11-13). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 15, 2019, the alleged onset date. (TR. 24). At step two, the ALJ determined Mr. Pharries suffered from the following severe impairments: obesity; hypertension; degenerative disc disease; diabetes mellitus; diabetic neuropathy; and left shoulder disorder, status post-surgical repair. (TR. 24). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 26).

At step four, the ALJ concluded that Mr. Pharries retained the residual functional capacity (RFC) to:

> [L]ift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally reach overhead with his left upper extremity. 20 CFR 404.1567(b).

(TR. 26).

With this RFC, the ALJ concluded that Plaintiff was not capable of performing his past relevant work. (TR. 28). As a result, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 69). Given the limitations, the VE identified

three jobs from the Dictionary of Occupational Titles (DOT) that Plaintiff could perform. (TR. 70). The ALJ then adopted the VE's testimony and concluded, at step five, that Mr. Pharries was not disabled based on his ability to perform the identified jobs. (TR. 29-30).

## III.   ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ failed to: (1) include all Claimant's limitations in his RFC and (2) properly consider medical evidence. (ECF Nos. 15:3-14; 19).

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.  PLAINTIFF'S FIRST PROPOSITION

In his first point of error, Plaintiff states: "The ALJ failed to include all Claimant's limitations in his RFC." (ECF No. 15:3-5). The Court disagrees.

The ALJ determined that Plaintiff suffered from medically determinable impairments involving depression and anxiety. (TR. 24). The regulations pertaining to the evaluation of mental impairments provide that the degree of a plaintiff's functional limitations will be rated in the following broad functional areas: activities of daily living, social functioning, concentration, persistence, or pace, and any episodes of decompensation, the so-called "B" criteria. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(C). As to the first three areas, the possible ratings are none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If the ratings in the first three areas are "none" or "mild" and if there have been no episodes of decompensation, a claimant's mental impairment is generally considered to be non-severe. 20 C.F.R. § 404.1520a(d)(1). Based on the ALJ's determination that Plaintiff had no more than a mild impairment in any of the four functional areas, he determined Plaintiff's depression and anxiety were non-severe impairments. (TR. 24-26).

Mr. Pharries does not challenge the ALJ's determination that he suffered no more than mild limitations and/or that his depression and anxiety were not found to be "severe." Instead, Plaintiff contends the ALJ erred by either not further discussing the impairments or by not including the mild limitations he found at step two in the RFC at step four.

4

In *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), the Tenth Circuit explained that when assessing a plaintiff's RFC, an ALJ must "consider the combined effect of all medically determinable impairments, whether severe or not." *Id.* at 1069; *see* 20 C.F.R. § 404.1545(a)(2). In that case, the ALJ had determined at step two that the plaintiff's mental impairments were not severe and stated that "these findings do not result in further limitations in work-related functions in the RFC assessment below." *Wells*, 727 F.3d at 1069 (quotations and alterations omitted). Noting that this statement "suggests that the ALJ may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments," the Tenth Circuit held that "the Commissioner's regulations demand a more thorough analysis" for the RFC determination. *Id.* at 1069, 1071.

Here, the ALJ's decision does not reflect the type of conflation of the step two and step four determinations criticized in *Wells*. Indeed, in the instant case, the ALJ explicitly recognized the distinction in his decision:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following [RFC] assessment reflects the degree of limitation the [ALJ] has found in the "paragraph B" mental function analysis.

(TR. 26). Additionally, in determining the RFC, the ALJ considered the state agency psychological consultants' opinions that Plaintiff's mental health was "non-severe." (TR. 28).

5

Social Security Ruling 96–8p, 1996 WL 374184, specifically cautions against any requirement that a noted paragraph B limitation equates to a corresponding RFC limitation. *Id.* at *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."); *see also Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) ("[W]e conclude that the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case."); *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) ("The ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis").

Moreover, Plaintiff does not cite to a single portion of the record that would support any RFC limitation related to a mental impairment. *See* ECF Nos. 15 & 19. The Court rejects Plaintiff's first proposition of error.

## VI. PLAINTIFF'S SECOND PROPOSITION

On December 2, 2019, Dr. Christopher Campbell performed a mental consultative examination on Plaintiff, and prepared a report outlining his findings. (TR. 299-304). On December 5, 2019, Dr. Robert Balogh performed a physical consultative examination on Plaintiff, and prepared a report outlining his findings. (TR. 307-313). On August 19, 2019, Plaintiff's treating physician, Dr. Maha Sultan, wrote a letter outlining Plaintiff's diagnoses and the effects therefrom on his ability to work. (TR. 272-273). On January 30, 2020 and

January 4, 2021, Dr. Sultan completed a Medical Source Statement, outlining Plaintiff's physical work-related limitations and abilities. (TR. 323-325, 332-334). Mr. Pharries alleges legal error in the ALJ's evaluation of all of the aforementioned reports. The Court agrees, but only with respect to the ALJ's evaluation of Dr. Sultan's Medical Source Statements.

### A.   Governing Legal Definitions and Regulatory Standards

The Social Security Administration has defined categories of evidence, including, as pertinent here, "medical opinions," and "other medical evidence." *See* 20 C.F.R. § 404.1513(a)(2), (3). The regulations define a "medical opinion" as "a statement from a medical source about what an applicant can still do despite his impairment(s) and whether he has one or more impairment-related limitations involving the:

> (A) Ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Ability to perform other demands of work, such as seeing, hearing, or using other senses; or the
>
> (D) Ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). For claims filed

after March 27, 2017, such as Mr. Pharries',[1] 20 C.F.R. § 404.1520c provides that the Commissioner no longer will "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(a). Instead, the ALJ need only articulate how persuasive he finds the medical opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2). In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(c)(3)-(5). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Additionally, the ALJ may not selectively review any medical opinion and must provide a proper explanation to support his findings. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). And if the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

---

[1] *See* TR. 22.

The regulations define "other medical evidence" as "including judgments about the nature and severity of [a claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3); *Duran v. Berryhill*, No. CIV-18-50, 2019 WL 1370101, *9 (D. N.M. March 26, 2019) (report containing results and interpretation of standardized tests, a summary of information claimant provided in a behavioral rating, diagnoses and recommendations were not medical opinions under 2017 regulations). When evaluating "other medical evidence" the ALJ is not required to consider the "medical opinion" factors listed above. *See supra*; *see M.H. v. Kijakazi*, No. 1:21-CV-01797-CNS, 2023 WL 2401063, at *5 (D. Colo. Mar. 8, 2023) ("The ALJ is not required to articulate the persuasiveness of other medical evidence with reference to supportability and consistency.").

### B. Dr. Campbell's Report

As stated, Dr. Campbell examined Plaintiff's mental health and authored a report, concluding that Plaintiff:

- Did not present with signs or symptoms that was consistent with any major diagnosis from the DSM-V;
- Had a "good" mental health prognosis;
- Appeared capable of managing his own finances and business affairs;
- Appeared capable of understanding, remembering, and managing instructions and tasks; and
- Spoke and communicated effectively.

(ECF No. 304). In the decision, the ALJ provided a detailed summary of the examination and Dr. Campbell's findings, ultimately concluding that he found the report "persuasive."

(TR. 25). Mr. Pharries disagrees with the ALJ's evaluation, arguing that "the ALJs failed to . . . explain how. . . the mental CE's report was unsupported by Dr. Sultan's findings over the three years of her reports." (ECF No. 15:6-7). The Court rejects this argument.

As stated, when evaluating a medical opinion, the ALJ is required to articulate how persuasive he finds the medical opinion, by evaluating the opinion's supportability and consistency. 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2). It appears Plaintiff is arguing that the ALJ failed to perform a "consistency" analysis, because the ALJ failed to compare Dr. Campbell's report to Dr. Sultan's records in determining that Dr. Campbell's report was persuasive. *See supra*.[2]

The Court rejects Plaintiff's argument for the simple fact that it hinges on a finding that Dr. Campbell's report qualifies as a "medical opinion" as defined by the regulations. *See supra*. It does not. As noted, a "medical opinion" is "a statement from a medical source about what an applicant can still do despite her impairment(s) and whether he has one or more impairment-related limitations involving [various abilities]." *See supra*. But the findings in Dr. Campbell's report are considered "other medical evidence," as Dr. Campbell never addressed Plaintiff's specific work-related limitations or what he could still do despite his impairments. *See T.E. v. Commissioner, Social Security Administration*, No. 1:21-cv-02274-CNS, 2023 WL 2661615, at *3 (D. Colo. Mar. 28, 2023) (noting that a report from a physician did not constitute a "medical opinion" because the physician

---

[2] "Consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative finding to see whether the opinions and evidence are consistent. 20 C.F.R. § 404.1520c(c)(2).

"did not provide any particular manipulative limitations or address what [the claimant] could still do despite his diagnoses.").

The statements made by Dr. Campbell are considered "other medical evidence" because they are "judgments about the nature and severity of [Plaintiff's] impairments," diagnoses, and prognoses. 20 C.F.R. § 404.1513(a)(3). These are still statements that the ALJ had to consider but not necessarily discuss. See Mounts v. Astrue, 479 F. App'x 860, 866 (10th Cir. 2012) (noting there is a "difference between what an ALJ must consider as opposed to what he must explain in the decision."); Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Here, the record is clear that the ALJ did consider the report, which is all he was required to do. The Court finds no error.

## C. Dr. Sultan's Letter

On August 19, 2019, Dr. Sultan authored a letter, outlining Plaintiff's medical history, diagnosis, and medications. (TR. 272-273). Dr. Sultan also stated:

- Plaintiff was unable to perform certain work-related activities required by his past work as a truck driver;

- Plaintiff had "poor" understanding; memory; sustained concentration and persistence; social interaction; and adaptation, secondary to depression.

(TR. 272). Here, it appears as though Mr. Pharries is arguing that the ALJ failed to perform a proper "supportability" analysis with respect to Dr. Sultan's letter. See ECF No. 15:14.[3]

---

[3] "Supportability" refers to the ALJ examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinion (based on the evidence) are persuasive. 20 C.F.R. § 404.1520c(c)(1).

But again, as with Dr. Campbell's report, the information contained in Dr. Sultan's letter was not considered a "medical opinion," but rather "other medical evidence." *See supra*. Dr. Sultan never stated what Plaintiff could still do despite his impairments, but instead only stated Plaintiff's inability to perform certain physical conditions required by his past work as a truck driver. As such, the Court finds no merit to Plaintiff's argument.

### D.    Dr. Balogh's Report

On December 5, 2019, Dr. Balogh performed a physical examination on Plaintiff and authored a report outlining his findings. In the report, Dr. Balogh diagnosed Mr. Pharries with hypertension; diabetes, Type II; back pain; knee pain; hyperlipidemia; restless leg syndrome; psoriasis; gout; peripheral vascular disease; anxiety; and depression. (TR. 309). Dr. Balogh also stated that Plaintiff:

- Ambulated with a stable gait;
- Had "normal" fine tactile manipulation;
- Had "negative" straight leg raising, bilaterally; had "normal" bilateral toe and heel walking; and
- Had full range of motion with the exception of his knees and left shoulder.

(TR. 309). The ALJ recited the findings from Dr. Balogh's report and stated that he had considered it in formulating the RFC. *See* TR. 28. Plaintiff challenges the ALJ's evaluation of this report, arguing that the ALJ failed to perform a proper "consistency" and "supportability" analysis. *See supra*; ECF No. 15:6 ("[T]he ALJ failed to . . explain how the physical CE's report was supported[.]"). But again, the findings in Dr. Balogh's report are considered "other medical evidence," not a medical opinion. Because the ALJ stated that he had considered the report, the Court finds no error.

### E. Dr. Sultan's Medical Source Statements

On January 20, 2020, and January 4, 2021, Dr. Sultan authored Medical Source Statements, finding that Plaintiff could:

- "frequently" lift and carry less than 10 pounds;
- "occasionally" lift and carry less than 10 pounds;
- Stand and/or walk for 1 hour continuously;
- Sit less than 1 hour during an 8-hour workday;
- Push and/or pull less than 10 pounds;
- Never climb, balance, stoop, kneel, crouch, crawl, or feel; and
- "occasionally" reach, handle, or finger.

(TR. 323-324, 332-334). Plaintiff argues that the ALJ failed to properly evaluate Dr. Sultan's medical opinions. (ECF No. 15:6-14). The Court agrees.

In the decision, the ALJ acknowledged both Medical Source Statements, and found them to be "unpersuasive" as "inconsistent with the progress notes and extensive negative findings upon examination." (TR. 28). Arguably, the ALJ discussed the factor of "supportability" when he made this statement. *See supra*; 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2). Two problems exist with the ALJ's explanation.

First, the ALJ's "supportability" analysis is insufficient. The ALJ rejected Dr. Sultan's opinions because they were "inconsistent with the progress notes and extensive negative findings upon examination." (TR. 28). But without further clarification, the Court cannot determine whether the reason given by the ALJ for rejecting Dr. Sultan's opinion is supported by the record. *See Oldham*, 509 F.3d at 1258, ("The ALJ's rationale must be

13

"sufficiently specific" to permit meaningful appellate review."). As a result, the Court finds error in the ALJ's evaluation of Dr. Sultan's opinions. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not "sufficiently specific" to enable this court to meaningfully review his findings.").

Second, even if the ALJ had performed a proper "supportability" analysis, the Court finds additional error by the ALJ's failure to perform any type of "consistency" analysis, by examining whether Dr. Sultan's reports were consistent with the other evidence of record. For those reasons, the Court finds error with respect to the ALJ's evaluation of the two Medical Source Statements from Dr. Sultan.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on May 26, 2023.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE